THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIA BEJARANO,<br>16970 Horton Ct<br>Dumfries, VA 22025 | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | Civil Action No._____ |
| v. | )<br>) | JURY TRIAL DEMANDED |
| BRAVO! FACILITY SERVICES, INC.<br>29 King George Road<br>Green Brook, NJ 08812 | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT

Plaintiff Maria Bejarano (hereinafter, "Plaintiff" or "Ms. Bejarano") brings this action against Defendant Bravo! Facility Services, Inc. (hereinafter "Defendant" or "Bravo") to seek redress for willful violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"), the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* as amended (DCHRA), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

Defendant discriminated against Ms. Bejarano based upon her disability and/or perceived disability; failed to provide accommodations for her disability, interfered with Ms. Bejarano's FMLA leave, retaliated against Ms. Bejarano for requesting medical leave, and wrongfully terminated Ms. Bejarano in violation of the ADA, the DCHRA and the FMLA. Ms. Bejarano seeks to recover all wages, employment benefits, or other compensation denied or lost due to Bravo's violations, back pay, liquidated damages, compensatory damages, punitive damages,

attorneys' fees, pre- and post-judgment interest, and any other legal or equitable relief this Court deems just and proper to redress Defendants' unlawful actions.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over Counts I, II, V and VI of this Complaint pursuant to 28 U.S.C. § 1331, as these claims arise under the laws of the United States.

2.      This Court has supplemental jurisdiction over Counts III and IV of this Complaint, which arises under the laws of the District of Columbia, pursuant to 28 U.S.C. § 1367(a).

3.      This Court has personal jurisdiction over Defendant because Bravo has substantial, continuous, and systematic contacts with the District of Columbia and Defendant's actions and omissions alleged herein occurred in the District of Columbia.

4.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) because Bravo does business in the District of Columbia and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On June 10, 2014, Ms. Bejarano filed a charge of discrimination with the Virginia Human Rights Council.

6.      Upon information and belief, between June 10, 2014 and November 17, 2014, the Virginia Human Rights Council transferred Ms. Bejarano's complaint of discrimination to the Equal Employment Opportunity Commission ("EEOC").

7.      On November 17, 2014, the EEOC informed Ms. Bejarano that her charge of discrimination was accepted and requested a signed EEOC Form 5 to begin the investigation.

8.      On November 24, 2014, Ms. Bejarano signed the EEOC Form 5, which was received by the EEOC on December 15, 2014.

9.      On November 24, 2014, Ms. Bejarano's charge of discrimination was cross-filed with the D.C. Office of Human Rights.

10.      The EEOC issued a Notice of Right to Sue to Ms. Bejarano on March 30, 2016.

## PARTIES

11.      Ms. Bejarano is an adult resident of Virginia.

12.      Ms. Bejarano was an employee within the meaning of the ADA and the DCHRA.

13.      Ms. Bejarano was an "eligible employee" within the meaning of the FMLA when she was terminated by Defendant.

14.      Defendant is headquartered in Green Brook, New Jersey and is organized under the laws of the State of New Jersey.

15.      Defendant does business in the District of Columbia.

16.      Defendant provides facility support services, including janitorial services, to companies throughout the United States.

17.      At all times relevant to this Complaint, Defendant was a covered entity within the meaning of the ADA.

18.      At all times relevant to this Complaint, Defendant was a covered entity within the meaning of the DCHRA.

19.      Defendant was a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

20.      At all times relevant to this Complaint, Bravo was engaged in interstate commerce and/or in an industry or activity affecting commerce.

21.     At all times relevant to this Complaint, Bravo provided services at multiple worksites located within 75 miles of the District of Columbia.

22.     At all times relevant to this Complaint, Bravo employed fifty (50) or more employees within a 75-mile radius of Ms. Bejarano's worksite during each workday of the twenty (20) or more calendar workweeks in the current or preceding calendar year.

## FACTS

23.     From approximately 2005 through February 2007, Ms. Bejarano worked for Brener Building Maintenance as a site manager. In or around February 2007, Bravo acquired Brener Building Maintenance.

24.     From on or about February 2007 to July 2007, Ms. Bejarano worked for Bravo as a site manager.

25.     In July 2007, Ms. Bejarano resigned to care for her brother who suffered from a stroke.

26.     On around March 2012, Bravo re-hired Ms. Bejarano as an Environmental Services Site Manager.

27.     When Bravo re-hired Ms. Bejarano in March 2012, Bravo assigned Ms. Bejarano to work as an Environmental Services Site Manager at Kaiser Permanente Medical Facilities in the D.C metro area.

28.     During the relevant time period, as the Environmental Services Site Manager, Ms. Bejarano worked the "swing shift" from 10 am to 7 pm.

29.     As Environmental Services Site Manager, Ms. Bejarano's duties included supervising shift supervisors, employees, finalizing payroll, ordering supplies, training new employees, and interacting with Bravo's clients.

4

30.     On or about March 2013, Bravo transferred Ms. Bejarano to work as an Environmental Services Site Manager at the Kaiser Permanente Medical Facility in Capital Hill in the District of Columbia.

31.     From March 2012 through October 2013, Ms. Bejarano was supervised by John Cruse and Byron Teasley.

32.     In August 2013, Ms. Bejarano was diagnosed with breast cancer.

33.     On or around August 26, 2013, Ms. Bejarano informed Bravo that she was diagnosed with cancer and would need to take medical leave.

34.     On October 10, 2013, Ms. Bejarano requested 18 days of leave to have a mastectomy on October 30, 2013.

35.     At no point between August 26, 2013 and May 23, 2014 did Bravo ever provide Ms. Bejarano with Notice of her FMLA eligibility and rights.

36.     At no point between August 26, 2013 and May 23, 2014 did Bravo ever provide Ms. Bejarano with an "FMLA Certification of Health Care Provider for Employee's Serious Health Condition" form.

37.     When Ms. Bejarano returned from leave, on or around November 22, 2013, Dionne Anderson was Ms. Bejarano's supervisor who replaced Ms. Bejarano's previous supervisor, John Cruse.

38.     When Ms. Bejarano returned from leave, she requested from Ms. Anderson to take intermittent leave for follow-up medical appointments and chemotherapy treatments.

39.     Ms. Anderson approved Ms. Bejarano's requests for intermittent leave to receive cancer treatment.

40.     Beginning in January 2014, Ms. Anderson began complaining about Ms. Bejarano's intermittent leave and directed Ms. Bejarano to, going forward, work an 8-hour day, or not at all.

41.     In or around February 2014, Ms. Anderson began demanding proof of Ms. Bejarno's medical appointments for her cancer treatment.

42.     In or around late April 2014, Ms. Bejarano advised Mr. Teasley and Ms. Anderson that she had breast reconstruction surgery scheduled for May 7, 2014, and requested two or three days of leave to recuperate.

43.     Ms. Anderson informed Ms. Bejarano that her leave request for surgery would be granted on the condition that Ms. Bejarano find another employee to cover her duties during her absence.

44.     On Monday, May 5, 2014, Ms. Bejarano complied with Ms. Anderson's request and sent an email with the names of two employees, Jose Ramos and Deisy Servin, who agreed to cover Ms. Bejarano's duties during her absence.

45.     Ms. Bejarano returned to work on Monday, May 12, 2014.

46.     Ms. Bejarano had a follow-up appointment with her breast reconstruction surgeon scheduled for May 16, 2014 at 8:30 am, before the start of her shift at 10 am, which would have allowed her to report to work by 10 am.

47.     In the early evening on Thursday, May 15, 2014, Ms. Bejarano received a call from her oncologist who indicated that it was imperative the he see Ms. Bejarano on May 16, 2014, at 1 pm, to provide her with the results of her blood test that measured cancer cells and to provide her with additional medication.

48.     Bravo's sick leave policy requires employees to inform their supervisor two hours prior to the start of their shift of their intention to use sick leave.

49.     During the evening on May 15, 2014, Ms. Bejarano informed Mr. Teasley that, because of the time and distance between her 8:30 am appointment and her now unplanned 1 pm appointment, she had no choice but to use leave for the full day on Friday, May 16, 2014.

50.     Ms. Bejarano's request for sick leave was made well before two hours before the start of her shift at 10 am the next day on May 16, 2014.

51.     Early in the morning on Friday, May 16, 2014, Mr. Teasly called Ms. Bejarano and reprimanded her for providing such short notice and questioned her request for medical leave.

52.     On Friday, May 16, 2014, Ms. Anderson and Ms. Bejarano exchanged the following communications by electronic mail:

**From Dionne Anderson to Maria Bejarano at 10:29 AM:**

Maria,

We need a doctor's note for today absent [sic].

Thanks,

Dionne

**From Maria Bejarano to Dionne Anderson at 10:53 AM:**

Dionne

I will send as soon as possible.  Is there a special reason for your request?  I ask because it is my understanding that a doctors [sic] excuse is needed for 2 or more day[sic] of being sick.

Maria

**From Dionne Anderson to Maria Bejarano at 11:30 AM:**

Maria,

[S]ince you gave such short notice and has [sic] missed so many days that I would like to have it in your file.

Any further questions, please let me know.

Thanks,
Dionne

**From Maria Bejarano to Dionne Anderson at 3:57 PM:**

Dionne

I find your request and Byron's telephone call early this morning perplexing and somewhat offensive.  According to Bravo policies a doctors [sic] excuse may be requested for two or more days calling in sick. This morning I explain [sic] to Byron that I did not ask for today off until last night because I only had one doctors [sic] appointment schedule [sic] for this morning [sic] Dr. Venturi [sic] wish is to require a week after any surgery and I was going to work after it.

I was not supposed to go to the Oncology doctor until July but as I explain [sic] to Byron the [sic] doctor call because he needs to see me at 1pm. My illness and treatment is of common knowledge within the company [sic] I understand that by company policy I may not get paid for the day not worked but not a request a doctors [sic] note for one day.

Byron calling me early in the morning telling me why such short notice [sic] and you requesting a doctors [sic] note as soon as possible and now telling [sic] that because of the days I have miss [sic] working it seems like you are questioning the veracity of my doctors [sic] appointments.

According to the law I am entitle [sic] to medical leave and if you will like I can provide you with my doctors [sic] names and telephone numbers so you can ask them if they consider that [sic] I have abused or claim to have miss [sic] work with no need to do so.

Maria

53.    Ms. Bejarano provided the requested doctors' notes to Bravo on May 16, 2014.

54.    Bravo terminated Ms. Bejarano seven days later on May 23, 2014.

55.     Bravo's termination letter, dated May 23, 2014, did not provide any explanation for Ms. Bejarano's termination.

## COUNT I

### Violation of the Americans with Disabilities Act, As Amended (Discrimination Based Upon Disability and/or Perceived Disability)

56.     Ms. Bejarano re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

57.     Ms. Bejarano was disabled within the meaning of the ADA.

58.     Ms. Bejarano suffered from and had a record of breast cancer which substantially limited normal cell growth and other major life activities.

59.     Bravo was, at all times relevant to this matter, an employer of Ms. Bejarano for purposes of the ADA.

60.     Ms. Bejarano alleges that Bravo and/or its agents or employees acting on its behalf, subjected her to discrimination by terminating her employment based on her disability or perceived disability.

61.     Ms. Bejarano alleges that Bravo and/or its agents or employees acting on its behalf, subjected her to discrimination by failing to provide reasonable accommodations for her disability.

62.     At the time of Ms. Bejarano's termination, Bravo was aware of her disability and/or perceived disability.

63.     Before Ms. Bejarano's termination, Bravo did not engage in the interactive process or discuss alterative positions with Ms. Bejarano.

64.     As a result of Bravo's actions, Ms. Bejarano suffered economic harm in the form

of lost wages and emotional harm, including mental anguish, anxiety, stress, humiliation, and

loss of enjoyment of life.

## COUNT II

### Violation of the Americans with Disabilities Act, As Amended
### (Failure to Accommodate)

65.     Ms. Bejarano re-alleges and incorporates by reference each and every allegation

set forth in the preceding paragraphs.

66.     Ms. Bejarano was disabled within the meaning of the ADA.

67.     Ms. Bejarano suffered from and had a record of breast cancer which substantially

limited normal cell growth and other major life activities.

68.     Bravo was, at all times relevant to this matter, an employer of Ms. Bejarano for

purposes of the ADA.

69.     Bravo was informed of Ms. Bejarano's disability and need for an accommodation

of medical leave and intermittent leave due to her disability.

70.     Seven days after Bravo reprimanded Ms. Bejarano for missing "so many days"

for her cancer treatment, Bravo terminated Ms. Bejarano.

71.     Bravo failed to allow Ms. Bejarano to modify her work schedule when it required

her to work an 8-hour day or not at all.

72.     Bravo failed to provide Ms. Bejarano with a reasonable accommodation and

failed to engage in the interactive process with Ms. Bejarano and /or her physicians to determine

an appropriate and reasonable accommodation for Ms. Bejarano as required by law.

73.     As a direct and proximate result of the unlawful conduct by Bravo, Ms. Bejarano has suffered economic harm in the form of lost wages and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

## COUNT III

**Violations of the District of Columbia Human Rights Act**
**(Discrimination Based Upon Disability and/or Perceived Disability)**

74.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the DCHRA.

75.     Ms. Bejarano was disabled within the meaning of the DCHRA.

76.     Ms. Bejarano suffered from and had a record of breast cancer which substantially limited normal cell growth and other major life activities.

77.     Bravo was, at all times relevant to this matter, an employer of Ms. Bejarano for purposes of the DCHRA.

78.     Ms. Bejarano alleges that Bravo and/or its agents or employees acting on its behalf, subjected her to discrimination by terminating her employment based on her disability or perceived disability.

79.     Ms. Bejarano alleges that Bravo and/or its agents or employees acting on its behalf, subjected her to discrimination by failing to provide reasonable accommodations for her disability.

80.     At the time of Ms. Bejarano's termination, Bravo was aware of her disability and/or perceived disability.

81.     Before Ms. Bejarano's termination, Bravo did not engage in the interactive process or discuss alterative positions with Ms. Bejarano.

82.     As a result of Defendant's actions, Plaintiff suffered economic harm in the form of lost wages and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

## COUNT IV

### Violations of the District of Columbia Human Rights Act
### (Failure to Accommodate)

83.     Ms. Bejarano re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

84.     Ms. Bejarano was disabled within the meaning of the DCHRA.

85.     Ms. Bejarano suffered from and had a record of breast cancer which substantially limited normal cell growth and other major life activities.

86.     Bravo was, at all times relevant to this matter, an employer of Ms. Bejarano for purposes of the DCHRA.

87.     Bravo was informed of Ms. Bejarano's disability and need for an accommodation of medical leave and intermittent leave due to her disability.

88.     Seven days after Defendant reprimanded Ms. Bejarano for missing "so many days" for her cancer treatment, Defendant terminated Ms. Bejarano.

89.     Bravo failed to allow Ms. Bejarano to modify her work schedule when it required her to work an 8-hour day or not at all.

90.     Bravo failed to provide Ms. Bejarano with a reasonable accommodation and failed to engage in the interactive process with Ms. Bejarano and /or her physicians to determine an appropriate and reasonable accommodation for Ms. Bejarano as required by law.

91.     As a direct and proximate result of the unlawful conduct by Bravo, Ms. Bejarano has suffered economic harm in the form of lost wages and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

## COUNT V

### Violations of the Family and Medical Leave Act
### (Interference with FMLA Rights)

92.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93.     Ms. Bejarao worked at least 1,250 hours during the period immediately preceding her requests for medical leave and intermittent leave.

94.     As an eligible employee, Ms. Bejarano was entitled to take twelve (12) weeks of protected medical leave for her serious health condition, pursuant to the FMLA.

95.     At all times relevant to this Complaint, Bravo employed fifty (50) or more employees within a 75-mile radius of Ms. Bejarano's worksite during each workday of the twenty (20) or more calendar workweeks in the preceding calendar year.

96.     Bravo was a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

97.     Bravo was prohibited from interfering with, restraining, and/or denying Ms. Bejarano's exercise of or attempt to exercise her rights under the FMLA.

98.     Ms. Bejarano was prejudiced by Bravo's interference and failure to provide her with Notice of her FMLA eligibility and rights to take FMLA leave.

99.     Bravo willfully interfered with, restrained, and/or denied Ms. Bejarano's exercise of her FMLA rights and/or her attempts to exercise those rights.

100.    As a direct and proximate result of the acts and omissions complained of above, Ms. Bejarano suffered harm including but not limited to lost wages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT VI**

**Violations of the Family and Medical Leave Act**
**(Retaliatory Discharge)**

101.    Ms. Bejarano re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

102.    It was an unlawful employment practice for Bravo to discriminate or retaliate against Ms. Bejarano because she exercised or attempted to exercise her rights under the FMLA.

103.    Bravo terminated Ms. Bejarano seven days after she opposed Defendant's unlawful attempt to interfere with, restrain, or deny her exercise of or attempt to exercise her FMLA right to medical leave.

104.    Defendant terminated Plaintiff because she exercised or attempted to exercise her rights to take FMLA leave.

105.    As a direct and proximate result of the acts and omissions complained of above, Ms. Bejarano suffered harm including but not limited to lost wages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

106.    Bravo's actions constitute a willful violation of the FMLA, 29 U.S.C. § 2615.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Bejarano respectfully requests the following relief:

A. Enter judgment for Ms. Bejarano against Bravo on all counts;

B. Declare that the conduct of Bravo is in violation of the ADA, DCHRA and FMLA;

C. Enter an award of compensatory damages in an amount to be determined at trial;

D. Enter an award of punitive damages in an amount to be determined at trial; and

E. Enter an award of backpay in the amount of any wages, employment benefits, or other compensation that Ms. Bejarano lost as a result of termination, plus liquidated damages equal to twice the sum of her total economic loss.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial for this action.

Respectfully Submitted,

Laura E. Varela-Addeo
Bar No. 28260
lvarela@ggilbertlaw.com
The Law Offices of Gary M. Gilbert
   & Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Tel:  (301) 608-0880
Fax:  (301) 608-0881

Marlene S. Ailloud
Bar No. 1027951
mailloud@ggilbertlaw.com
The Law Offices of Gary M. Gilbert
& Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Tel:  (301) 608-0880
Fax:  (301) 608-0881