UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARIA BEJARANO,                     )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 16-962 (RBW)
                                    )
BRAVO! FACILITY SERVICES, INC.,     )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

The plaintiff, Maria Bejarano, brings this civil action against her former employer, Bravo! Facility Services, Inc. ("Bravo"), asserting claims under the Americans with Disabilities Act ("ADA"), the District of Columbia Human Rights Act ("DCHRA"), and the Family and Medical Leave Act ("FMLA"). See Complaint ("Compl.") at 1. Currently before the Court is the Defendant's Motion to Dismiss ("Def.'s Mot."), which seeks dismissal of Bejarano's Complaint pursuant to the doctrine of judicial estoppel. Def.'s Mot. at 1. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny Bravo's motion.

**I.    BACKGROUND**

Bravo hired Bejarano as an Environmental Services Site Manager in March 2012. See Compl. ¶ 26. "In August 2013, [ ] Bejarano was diagnosed with breast cancer." Id. ¶ 32. "On or around August 26, 2013, [ ] Bejarano informed Bravo that she was diagnosed with cancer and would need to take medical leave." Id. ¶ 33. Bejarano requested to be on leave for eighteen days

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum in Support of Defendant's Motion to Dismiss ("Def.'s Mem."); (2) the Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"); and (3) the Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss ("Def.'s Reply").

in October and November of 2013, to have a mastectomy, id. ¶ 34, and additional intermittent leave in the spring of 2014 "for follow-up medical appointments and chemotherapy treatments," see id. ¶¶ 38–39, 42–45, 49–53. Bravo terminated Bejarano's employment on May 23, 2014, id. ¶ 54, and she then filed a charge of discrimination with the Virginia Human Rights Counsel on June 10, 2014, id. ¶ 5. Bejarano's charge was subsequently transferred to the Equal Employment Opportunity Commission ("EEOC"), at some time between June 10, 2014, and November 7, 2014. Id. ¶ 6. "On November 24, 2014, [ ] Bejarano's charge of discrimination was cross-filed with the [District of Columbia] Office of Human Rights." Id. ¶ 9.

On September 2, 2014, Bejarano filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"). See Pl.'s Opp'n, Exhibit ("Ex.") A (Voluntary Petition) at 2. She did not list her charge of discrimination or the claims asserted against Bravo in this case on her bankruptcy schedules. See id., Ex. A (Voluntary Petition) at 10 (Schedule B – Personal Property) (indicating "none" for "[o]ther contingent and unliquidated claims of every nature"); id., Ex. A (Voluntary Petition) at 27 (Statement of Financial Affairs) (indicating "none" for "suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case"). "The Bankruptcy Court discharged [ ] Bejarano['s] debt on December 10, 2014, and closed her case on December 15, 2014." Pl.'s Opp'n at 4; see also id., Ex. B (Docket Sheet for Bankruptcy Petition #: 14-13251-RGM ("Bankr. Docket")) at 2 (Docket Nos. 10, 12).

On April 22, 2015, Bejarano filed a motion to re-open her bankruptcy case in order to disclose her "employment discrimination and wrongful discharge" claim as an asset. See Pl.'s Opp'n, Ex. C (Notice of Motion) at 6 (Motion to Reopen Case). Bejarano served her Notice of

2

Motion and Motion to Reopen Case on all of her creditors.  See id., Ex. C (Notice of Motion) at 1–9.  After the Bankruptcy Court granted her motion on May 29, 2015, see id., Ex. G (Order Granting Leave to Reopen Case), Bejarano amended her bankruptcy schedules on June 2, 2015, see id., Ex. D (Amendment Cover Sheet) at 1, by listing her "Pending Employment Discrimination Claim" of "unknown" value on her list of personal property, see id., Ex. D (Amendment Cover Sheet) at 4 (Amended Schedule B—Personal Property).  On August 4, 2015, the trustee of the bankruptcy estate filed a report wherein he stated "that there is no property available for distribution from the estate over and above that exempted by law[, and . . . ] I hereby certify that [Bejarano's] estate . . . has been fully administered."  Id., Ex. B (Bankr. Docket) at 3 (Docket No. 22).  On October 29, 2015, the Bankruptcy Court granted Bejarano a "standard discharge" and again closed her case.  Id., Ex. B (Bankr. Docket) at 1, 4.

"The EEOC issued a Notice of Right to Sue to [ ] Bejarano on March 30, 2016."  Compl. ¶ 10.  Bejarano filed her Complaint with this Court on May 20, 2016.  See id. at 1.  On February 24, 2017, Bravo filed its motion to dismiss Bejarano's claims on the grounds of judicial estoppel.  See Def.'s Mot. at 1.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Although the Court "must treat the complaint's factual allegations as true [and] must grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged," Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (alteration in original) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000)), legal allegations devoid of factual support are not entitled to this assumption, see Kowal, 16 F.3d at 1276.  Moreover, a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action."  Hinson ex rel. N.H. v. Merritt Educ. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting Twombly, 550 U.S. at 555).  In assessing the merits of a motion to dismiss under Rule 12(b)(6), public records are subject to judicial notice.  Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004).

### III.  ANALYSIS

**A.  Disclosure of the Plaintiff's FMLA Claim to the Bankruptcy Court**

Before considering whether the doctrine of judicial estoppel bars Bejarano's claims, the Court must first resolve a threshold dispute—whether Bejarano disclosed her FMLA claims against Bravo to the Bankruptcy Court in her amended list of personal property—to ensure that Bejarano has standing to bring her FMLA claim.

"Under the bankruptcy rules, 'a debtor is under a duty both to disclose the existence of pending lawsuits when [s]he files a petition in bankruptcy and to amend h[er] petition if circumstances change during the course of the bankruptcy.'"  Marshall v. Honeywell Tech. Sys. Inc., 828 F.3d 923, 926 (D.C. Cir. 2016) (quoting Moses v. Howard Univ. Hosp., 606 F.3d 789, 793 (D.C. Cir. 2010)), cert. denied, __ U.S. __, 137 S. Ct. 830 (2017); see also 11 U.S.C. § 521(a)(1) (2012) (listing the information the debtor is required to disclose).  Pending lawsuits, like the debtor's other assets, automatically become property of the bankruptcy estate upon the

4

filing of a bankruptcy petition.  See 11 U.S.C. § 541(a)(7); see also Moses, 606 F.3d at 795 ("The commencement of Chapter 7 bankruptcy extinguishes a debtor's legal rights and interests in any pending litigation, and transfers those rights to the trustee, acting on behalf of the bankruptcy estate.").  "[W]hen an estate is in bankruptcy under Chapter 7, . . . the trustee is the representative of the estate and retains the sole authority to sue and be sued on its behalf." Marshall, 828 F.3d at 926 (alteration in original) (quoting Moses, 606 F.3d at 793).  "Thus, '[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it.'"  Moses, 606 F.3d at 795 (alteration in original) (quoting Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004)).

"A debtor regains standing to bring claims that accrued pre-petition if those claims are abandoned."  Nicholas v. Green Tree Servicing, LLC, 173 F. Supp. 3d 250, 255 (D. Md. 2016). The Bankruptcy Code outlines three ways in which property of the bankruptcy estate may be abandoned: "(1) by the trustee after notice and hearing; (2) by court order after notice and hearing; or (3) by operation of law if property listed on the debtor's schedules of property has not been administered when the bankruptcy case closes."  Id. (citing 11 U.S.C. § 554).  "[W]hen property of the bankrupt is abandoned, the title 'reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously.'"  Moses, 606 F.3d at 791 (quoting Morlan v. Univ. Guar. Life Ins. Co., 298 F.3d 609, 617 (7th Cir. 2002)).

As various courts have noted, the Bankruptcy Code does not provide a standard for determining whether a debtor has sufficiently disclosed pending legal claims.  See Hermann v. Hartford Cas. Ins. Co., __ F. App'x __, __, 2017 WL 117118, at *4 (10th Cir. Jan. 12, 2017) ("Although the duty of disclosure is clear, [11 U.S.C. § 521] does not address the degree of detail

required."); Furlong v. Furlong (In re Furlong), 660 F.3d 81, 87 (1st Cir. 2011) (same); Nicholas, 173 F. Supp. 3d at 255 (same); Eun Joo Lee v. Forster & Garbus LLP, 926 F. Supp. 2d 482, 489 (E.D.N.Y 2013) (same); see also Tilley v. Anixter Inc., 332 B.R. 501, 509 (D. Conn. 2005) ("There are . . . no bright-line rules for how much itemization and specificity is required." (alteration in original) (quoting In re Mohring, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992)). "However, a review of authority . . . reveals that courts typically look at whether the schedule gives the trustee enough information about the claim so he or she can decide if the claim is worth pursuing." Eun Joo Lee, 926 F. Supp. 2d at 489. In other words, "debtors' schedules need not identify every potential cause of action, every possible defendant, or even any defendant at all, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the claim ultimately asserted." Nicholas, 173 F. Supp. 3d at 255 (citing In re Furlong, 660 F.3d at 87–88).

For example, in Cusano v. Klein, 264 F.3d 936 (9th Cir. 2001), the Ninth Circuit concluded that Cusano's listing of "songrights in . . . [s]ongs written while in the band known as 'KISS'" as an asset on his bankruptcy schedule "was not so defective that it would forestall a proper investigation of the asset," id. at 946. The Ninth Circuit continued: "The 'songrights' asset as described by Cusano can reasonably be interpreted to mean copyrights and rights to royalty payments for songs written for the band KISS pre-petition." Id. Accordingly, the Ninth Circuit concluded that Cusano's "listing of the 'songrights' asset was a sufficient scheduling of [his] interest in his pre-petition compositions, which reverted to him upon confirmation of his plan." Id. at 947.

Similarly, in Bonner v. Sicherman (In re Bonner), 330 B.R. 880, 2005 WL 2136204 (B.A.P. 6th Cir. Sept. 6, 2005), the Bankruptcy Appellate Panel of the Sixth Circuit concluded

6

that the debtors' listing of an "Auto Accident Claim" on their bankruptcy schedule encompassed not only a personal property claim, but also a personal injury claim arising out of an auto accident, id. at *4. The Panel noted that "it is common knowledge that an automobile accident may, and often does, result in personal injury," and therefore, "[b]y listing 'Auto Accident Claim,' the debtors gave the [t]rustee sufficient information alerting him to the possible existence of a personal injury claim and the need for further investigation." Id.

On the other hand, some courts have concluded that debtors' disclosures of legal claims on their bankruptcy schedules have not encompassed unrelated causes of action because the trustee would have no reason to investigate the unrelated claims. For instance, in Hermann, the Tenth Circuit concluded that the debtor's disclosure of a "Potential Personal Injury Award" on his bankruptcy schedule did not encompass a claim against the defendant insurance company "for unreasonable denial of and delay in processing his claim for worker's compensation benefits," __ F. App'x at __, 2017 WL 117118, at *4, because "a bad-faith insurance claim is not similarly related to a 'Potential Personal Injury Award,'" id. at *5. Similarly, the United States District Court for the Middle District of North Carolina concluded in Dixon v. Flowers Baking Co. of Jamestown, LLC, No. 1:11CV54, 2015 WL 1567537 (M.D.N.C. Apr. 8, 2015), that the debtor's disclosure of his worker's compensation claim did not encompass his ADA claims because "a claim for worker[']s compensation is not normally associated with a claim under the ADA, and thus would not give a trustee notice to investigate," id. at *7. Finally, in Tilley, the United States District Court for the District of Connecticut concluded that the debtor's disclosure of a claim "for back child support" on her bankruptcy schedule did not encompass a claim for intentional infliction of emotional distress because "a claim 'for back child support' does not [ ] inform a trustee of the need to investigate whether the plaintiff had a claim for intentional

7

infliction of emotional distress arising out of fraud in connection with the reporting of [her ex-husband's] income." 332 B.R. at 511.

Bravo argues that Bejarano never disclosed her FMLA claims to the Bankruptcy Court because the "pending employment discrimination claim" that she included in her Amended Schedule B does not encompass an FMLA claim.  See Def.'s Mem. at 2, 4, 10, 12 n.2, 13; Def.'s Reply at 1–3; see also Pl.'s Opp'n, Ex. D (Amendment Cover Sheet) at 4 (Amended Schedule B—Personal Property).  Bejarano argues in response that the notice of her pending employment discrimination claim "included her ADA, DCHRA and FMLA claims." Pl.'s Opp'n at 13.[2]

The Court agrees that Bejarano's listing of a "Pending Employment Discrimination Claim" on her list of personal property, see Pl.'s Opp'n, Ex. D (Amendment Cover Sheet) at 4 (Amended Schedule B—Personal Property), encompassed her FMLA claims because an FMLA claim is a form of employment discrimination.  Congress passed the FMLA for the purpose of, among other things, "minimiz[ing] the potential for employment discrimination on the basis of sex" and "promot[ing] the goal of equal employment opportunity for women and men."  29 U.S.C. § 2601(b)(4)–(5) (2012); see also Hodges v. District of Columbia, 959 F. Supp. 2d 148, 155 (D.D.C. 2013) ("The [FMLA] prohibits an employer from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA],' and from 'discharg[ing] or in any other manner discriminat[ing] against any individual' for engaging in activity protected by the FMLA." (alterations in original) (citing 29 U.S.C. § 2615(a)(1), (2)).  Furthermore, the Court is persuaded that Bejarano's bankruptcy schedule

---

[2] The Court rejects Bravo's contention that Bejarano failed to respond to its argument regarding her FMLA claim in her opposition, and thus, the Court should treat this argument as conceded, see Def.'s Reply at 1, because Bejarano responded to the argument when she stated that the "pending [employment] discrimination claim" that she listed on her Amended Schedule B "included her ADA, DCHRA and FMLA claims," Pl.'s Opp'n at 13 (emphasis added).

8

"contain[ed] enough information that a reasonable investigation by the trustee would reveal the claim[s] ultimately asserted," Nicholas, 173 F. Supp. 3d at 255, because, if the trustee had investigated Bejarano's charge of discrimination, he would have discovered that the District of Columbia Office of Human Rights was investigating potential FMLA violations in addition to discrimination based upon the plaintiff's alleged disability. See Pl.'s Opp'n, Ex. E (District of Columbia Office of Human Rights Order dated April 5, 2016) at 8–10 (Interrogatories directed to Bravo regarding potential FMLA, reasonable accommodation, and discharge violations). Therefore, the Court concludes that Bejarano sufficiently disclosed her FMLA claims against Bravo when she listed her "Pending Employment Discrimination Claim" on her Amended Schedule B. Consequently, Bejarano's FMLA claims (and her other employment discrimination claims) were abandoned and reverted to Bejarano after the trustee filed his report stating that no property was available for distribution and that Bejarano's estate had been fully administered, see Pl.'s Opp'n, Ex. B (Bankr. Docket) at 3–4 (Docket No. 22), and after the Bankruptcy Court granted Bejarano a "standard discharge" and closed her case, see id., Ex. B (Bankr. Docket) at 1, 4; see also 11 U.S.C. § 554(c) (stating that any property disclosed by the debtor "not otherwise administered at the time of the closing of a case is abandoned to the debtor"); Moses, 606 F.3d at 791 ("Once the trustee abandoned the estate's claims, [the debtor] was free to seek redress as if no bankruptcy petition had been filed."). As a result, the Court concludes that Bejarano has standing to assert her FMLA and her other employment discrimination claims.

**B.    Judicial Estoppel**

Bravo also argues that Bejarano's claims are barred by the equitable doctrine of judicial estoppel because she omitted these claims from her bankruptcy petition. See Def.'s Mem. at 1–2. The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a

9

case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)). "The inconsistent stances can be in the same or different proceedings." Shea v. Clinton, 880 F. Supp. 2d 113, 117 (D.D.C. 2012). The purpose of judicial estoppel is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," thereby playing "fast and loose with the courts." New Hampshire, 532 U.S. at 749–50 (citations omitted).

> The District of Columbia Circuit has explained that
>
> [t]here are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

Moses, 606 F.3d at 798 (citing New Hampshire, 532 U.S. at 750–51). Furthermore, "in order for judicial estoppel to apply, there must be 'a discernible connection' between the bankruptcy proceeding and the current lawsuit." Marshall, 828 F.3d at 928 (quoting Moses, 606 F.3d at 799).

The Supreme Court has made clear that these three factors are not "inflexible prerequisites," and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." New Hampshire, 532 U.S. at 751. "Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." Comcast Corp. v. FCC, 600 F.3d 642, 647 (D.C. Cir. 2010) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure § 4477, at 594 (2d ed. 2002)).  At bottom, the doctrine of judicial estoppel is an equitable one, "invoked by a court at its discretion."  Moses, 606 F.3d at 797 (quoting New Hampshire, 532 U.S. at 750).

The District of Columbia Circuit has observed that "judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case."  Id. at 798.  In Moses, the plaintiff filed suit in this Court against Howard University Hospital ("Howard"), alleging Title VII and DCHRA claims.  Id. at 791.  Thereafter, the plaintiff twice filed for bankruptcy in the District of Maryland, but never disclosed his pending discrimination claims in those proceedings.  Id.  Once Howard discovered that the plaintiff had failed to disclose these claims as an asset in the bankruptcy cases, it filed a motion for summary judgment on the ground that the plaintiff's discrimination claims were barred by judicial estoppel.  See id. at 794.  "[A]fter Howard had revealed [the plaintiff's] failures to disclose, [the plaintiff] moved to reopen his Chapter 7 bankruptcy proceeding . . . to amend his original 'Statement of Financial Affairs' to reflect the existence of this lawsuit."  Id.

Applying the first judicial estoppel factor, the Circuit concluded that the plaintiff's position that he was a proper plaintiff in his employment discrimination case was "clearly inconsistent" with his position before the Bankruptcy Court because he had not listed that claim as an asset on his bankruptcy schedules, even though he "had already filed and was pursuing [his] employment discrimination claim at the time [he] filed [his] bankruptcy petition[s]."  Id. at 799 (alterations in original) (citations omitted).  With regard to the second factor, the Circuit determined that "the bankruptcy court's decision to initially discharge [the plaintiff's debts], and the District Court's decision to allow th[e] case [before it] to continue even during the pendency

11

of [the plaintiff's] bankruptcy proceedings, leaves little doubt that [the plaintiff] succeeded in hiding the inconsistency from the courts." Id. Finally, the Circuit concluded that "[the plaintiff] set up a position in which he could gain an advantage over his creditors [because] . . . had he prevailed in his lawsuit against Howard, he would have kept any damages for solely himself, to the detriment of his creditors." Id. The Circuit also noted that the plaintiff's "inconsistent positions also adversely affected Howard" because, if the trustee had been made aware of the discrimination claims, "she might have settled this case early or decided not to pursue it, actions that might have benefitted Howard." Id.

The Circuit rejected the plaintiff's "argument that he cured his failure to disclose by reopening his [bankruptcy] case, amending his 'Statement of Financial Affairs,' and inviting [the trustee] to intervene in the suit" because

> allowing such a debtor to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive" for the debtor "to provide the bankruptcy court with a truthful disclosure of [his] assets," Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002), and would similarly diminish the doctrine's ability to deter the debtor from pursuing claims in the District Court to which he is not entitled.

Moses, 606 F.3d at 800.

Furthermore, the Circuit recently affirmed another member of this Court's grant of summary judgment on the grounds of judicial estoppel in Marshall, in which the Circuit concluded that the facts in Moses and Marshall were virtually indistinguishable, and thus, its analysis in Moses foreclosed Marshall's claims. See Marshall, 828 F.3d at 928–29 (applying the three judicial estoppel factors). In Marshall, the plaintiff omitted her employment discrimination claims on the original bankruptcy schedules that she filed in 2005, see id. at 925, and only re-

12

opened her bankruptcy case after the district court held that the plaintiff did not have standing to pursue her civil claims, see id. at 927. The Circuit noted in Marshall that "[i]n the nine years from 2005 until the district court issued summary judgment in 2014, this lawsuit generated nearly 200 docket entries, the bulk of which came before the defendants discovered [the plaintiff's] bankruptcy proceedings." Id. at 929. The Circuit continued: "A moment's research by [the plaintiff's] counsel or by [the plaintiff] herself would have revealed that during this extensive period of intense back and forth between the parties[, the plaintiff] had no standing to be a plaintiff." Id. at 929–30 (citations omitted). Therefore, the Circuit concluded that the plaintiff "offended the integrity of the District Court by presenting herself as a proper party to this court based on a position that is flatly inconsistent with the position she took in the bankruptcy proceedings." Id. at 929 (quoting Moses, 606 F.3d at 800). The Circuit therefore rejected the plaintiff's "argu[ment] that judicial estoppel should not apply because she orally disclosed one of her three discrimination claims to the trustee at the creditors' meeting in 2005, and her attorney allegedly had a telephone conversation with the trustee about the other two," because "oral disclosure does not meet the requirements of the bankruptcy code," id. at 930 (quoting Guay v. Burack, 677 F.3d 10, 20–21 (1st Cir. 2012)), and the plaintiff's "oral disclosure to the trustee did not constitute notice to her creditors and could not correct the false information she conveyed on her schedules," id. Mindful of this Circuit's precedents, the Court considers the facts of this case in accordance with the three judicial estoppel factors.

    **1.    Clearly Inconsistent Positions**

The Court concludes that Bejarano has not taken inconsistent positions before the Bankruptcy Court and this Court because Bejarano amended her bankruptcy schedules to disclose her claims in this case to the trustee and her creditors on June 2, 2015, see Pl.'s Opp'n,

13

Ex. D (Amendment Cover Sheet), before she filed her suit in this Court on May 20, 2016, see Compl. at 1. In Moses and Marshall, on the other hand, the plaintiffs only disclosed their legal claims after the defendants discovered the omissions and brought them to the attention of the district courts. See Marshall, 828 F.3d at 927; Moses, 606 F.3d at 794. As a result, the Circuit concluded in both Moses and Marshall that the plaintiffs had taken inconsistent positions because their positions that they were proper plaintiffs were "clearly inconsistent with [their] pursuit of bankruptcy." Moses, 606 F.3d at 799; see also Marshall, 828 F.3d at 929 ("And as in Moses, 606 F.3d at 799, [the plaintiff] held herself 'out before the District Court as a proper plaintiff, a position which was clearly inconsistent with [her] pursuit of bankruptcy.'"). As the Court has already concluded, see supra Part III.A., Bejarano is the proper party to assert her employment discrimination claims here because she disclosed those claims to the trustee and her creditors once the Bankruptcy Court granted her motion to re-open her case, and the trustee subsequently abandoned those claims, all of which occurred before Bejarano filed this suit against Bravo. Therefore, there is no inconsistency between Bejarano's position taken before the Bankruptcy Court and this Court.

### 2. The Perception that the Bankruptcy Court Was Misled

Similarly, the Court concludes that the Bankruptcy Court was not misled because, again, Bejarano did not hide her claims against Bravo from the Bankruptcy Court. See Pl.'s Opp'n, Ex. D (Amendment Cover Sheet). Therefore, Bejarano did not "succeed[] in persuading" the Bankruptcy Court that she had no legal claims against Bravo. See Moses, 606 F.3d at 798. In Moses and Marshall, on the other hand, the Circuit concluded that the Bankruptcy Court was misled in both cases because

> the bankruptcy court's decision to initially discharge Moses [and Marshall] from Chapter 7, and the District Court[s'] decision to allow th[eir] case[s] to continue [before the District Court] even during the pendency of Moses's [and Marshall's] bankruptcy proceedings, leaves little doubt that Moses [and Marshall] succeeded in hiding the inconsistency from the courts and creating the perception that either the first or the second court was misled.

Marshall, 828 F.3d at 929 (citation and internal quotation marks omitted) (quoting Moses, 606 F.3d at 799).

Moreover, the Circuit's conclusion in Moses that the plaintiff did not cure his failure to disclose civil claims to the Bankruptcy Court does not apply here because in that case, the plaintiff did not reopen his bankruptcy case and amend his schedules until "<u>after</u> Howard had revealed [his] failures to disclose." Moses, 828 F.3d at 794 (emphasis added); see also Marshall, 828 F.3d at 927 (noting that Marshall did not move to reopen her bankruptcy case until after the district court dismissed Marshall's complaint because only the bankruptcy trustee had standing to pursue her claims). The Circuit concluded that Moses's belated disclosure of his claims to the Bankruptcy Court was insufficient for purposes of defeating judicial estoppel because "allowing such a debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, <u>only after his omission has been challenged by an adversary</u>, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them." Id. at 800 (emphasis added) (citations and internal quotation marks omitted). Here, on the other hand, Bejarano re-opened her bankruptcy case and amended her bankruptcy schedules almost one year <u>before</u> she filed her this action against Bravo. See Pl.'s Opp'n, Ex. D (Amendment Cover Sheet) (dated June 2, 2015); Compl. at 1 (filed May 20, 2016). Therefore, the Circuit's concern that a debtor may be incentivized to "disclos[e] potential assets <u>only if he is caught concealing them</u>," Moses, 606 F.3d at 800 (emphasis added), does not apply here because Bejarano disclosed her claims to the

15

Bankruptcy Court before her "omission [was ever] challenged by an adversary," and thus, she was never "caught concealing them," see id.; see also Spaine v. Cmty. Contacts, Inc., 756 F.3d 542, 548 (7th Cir. 2014) ("The disclosures in the initial filings are not necessarily final . . . . The bankruptcy code explicitly provides for further investigation into the debtor's financial affairs, 11 U.S.C. §§ 341, 704(a)(4), and contemplates amendments to a debtor's initial schedules, id. § 350(b); Fed. R. Bankr. P. 1009(a) . . . ."). Therefore, Bejarano did not attempt to mislead the Bankruptcy Court, nor is there any basis to conclude that she did in fact mislead it.

### 3. Unfair Advantage to Bejarano or Unfair Detriment to Bravo

Finally, the Court concludes that Bejarano did not obtain an unfair advantage over her creditors because she disclosed her legal claims to them. This case is distinguishable from Marshall, where the trustee abandoned Marshall's claim that he had disclosed five years into the civil lawsuit, because the plaintiff's "estate had no money to hire another attorney and, given the passage of time, the bankruptcy trustee informed the district court that he could not 'attract new counsel, unfamiliar with the case, on a contingency basis.'" 828 F.3d at 927 (emphasis added). Here, on the other hand, Bejarano amended her bankruptcy schedules on June 2, 2015, see Pl.'s Opp'n, Ex. D (Amendment Cover Sheet), and, not until two months later did the trustee abandon Bejarano's claims, see id., Ex. B (Bankr. Docket) at 3–4 (Docket No. 22), months before Bejarano filed her Complaint against Bravo, see Compl. at 1. In other words, unlike the circumstances in Marshall, where the trustee was disadvantaged by the fact that the plaintiff's civil claim had already been pending for five years before it was disclosed, see 828 F.3d at 926–27, here, Bejarano notified the trustee of her potential claims before they were ever filed in this Court and, with regard to her ADA claims, before she had exhausted her administrative remedies by receiving a notice of her right to sue, see Compl. ¶ 10 ("The EEOC issued a Notice of Right

to Sue to [ ] Bejarano on March 30, 2016."). Therefore, Bejarano's creditors were not disadvantaged because the trustee had a sufficient opportunity to evaluate whether to pursue Bejarano's civil claims for the benefit of her creditors before the claims were filed in this Court.

Furthermore, the Court is unpersuaded by Bravo's argument that it suffered an unfair detriment "because '[h]ad the trustee known of this lawsuit during the Chapter 7 proceedings, [the trustee] might have settled this case early or decided not to pursue it, actions that might have benefitted [Bravo].'" Def.'s Mem. at 9 (alterations in original) (quoting Moses, 606 F.3d at 799). As explained above, the trustee knew about these claims during the bankruptcy proceedings, and thus had the opportunity to evaluate whether to settle the claims or not pursue them at all. Because the trustee abandoned the claims, Bejarano once again became the proper party to pursue these claims against Bravo. Although it might have been to Bravo's advantage if the trustee, not Bejarano, were the plaintiff here, the Court cannot conclude that any such detriment suffered by Bravo is "unfair" to the extent that Bejarano should be judicially estopped from pursuing her claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Bejarano has standing to assert her FMLA and other employment discrimination claims, and that the doctrine of judicial estoppel does not bar her claims against Bravo. Therefore, the Court must deny Bravo's motion to dismiss.

**SO ORDERED** this 24th day of April, 2017. [3]

REGGIE B. WALTON
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.